Nancy DANIO, Plaintiff,

v.

**EMERSON COLLEGE, Jacqueline Liebergott, Marc Hamilton, George Quenzel and Robert Barradas, Defendants.**

Civil Action No. 97–10132–WGY.

United States District Court,
D. Massachusetts.

May 5, 1997.

Kathryn M. Noonan, Law Office of Kathryn Noonan, Newton, MA, for plaintiff.

Willard Krasnow, Richard D. Wayne, Hinckley, Allen, Snyder & Comen, Boston, MA, for defendants.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff, Nancy Danio ("Danio"), commenced this suit against the defendants Emerson College ("Emerson") and Marc Hamilton, George Quenzel, and Robert Barradas (collectively "defendants"), alleging they discriminated against her on the basis of sex in setting her rate of pay in violation of Mass. Gen. Laws ch. 151B (Count I), Title VII (Count II), the Massachusetts Equal Pay Act, Mass. Gen. Laws ch. 149 § 105A (Count III), and the Federal Equal Pay Act, 29 U.S.C. § 206(d) (Count IV). Danio also alleges that the defendants named above and the defendant Jacqueline Liebergott ("Liebergott"), the President of Emerson, violated each of the named statutes by retaliating against her for pursuing rights guaranteed by federal and state law (Count V). Finally, Danio alleges Liebergott tortiously interfered with Danio's advantageous relations by terminating her position as a part-time instructor and refusing to offer Danio the opportunity to teach video production workshops on a part-time basis (Count VI).[1]

The individual defendants, Liebergott, Hamilton, Quenzel, and Barradas,[2] move to

---

1. Liebergott is not specifically named as a defendant in Counts I through IV. Liebergott is referenced in Count V.

2. Throughout this memorandum "defendants" generally refers to Hamilton, Quenzel and Barradas. Under Count V "defendants" includes all the individual defendants.

dismiss Counts I through VI under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The following discussion specifically addresses individual liability under Title VII and the Massachusetts and Federal Equal Pay Acts. All other claims survive the motion to dismiss. See ruling from the bench, March 26, 1997.

### ANALYSIS

Under a motion to dismiss for failure to state a claim upon which relief can be granted, this Court may grant the motion only if it appears that upon any set of facts which may be inferred from the complaint the plaintiff will be unable to recover. *Roma Construction Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996).

### A. Individual Liability under Title VII

■ The defendants move to dismiss Counts II and V on the ground that individuals cannot be held personally liable under Title VII.

This is an issue of first impression in this Circuit. The district courts within the Circuit are split. *Compare Martin v. Tennford Weaving Co., Inc.,* 1997 WL 50469 (D.Me. 1997) (individual liability under Title VII); *Iacampo v. Hasbro, Inc.,* 929 F.Supp. 562 (D.R.I.1996) (holding supervisory employees may be held individually liable under Title VII); *Ruffino v. State Street Bank and Trust Co.,* 908 F.Supp. 1019 (D.Mass.1995) (holding individuals can be held liable under Title VII); *with Attardo v. Sullivan & Gregg,* 1996 WL 107891 (D.N.H.1996) (holding persuasive the majority of circuit court decisions which have ruled that employees are not individually liable for Title VII violations); *Hernandez v. Wangen,* 938 F.Supp. 1052 (D.P.R.1996) (declining to extend Title VII liability to individuals); *Bagley v. Hoopes,* 1985 WL 17643 (D.Mass.1985) (holding Title VII does not impose individual liability).

Of the eight circuits which specifically have addressed individual liability under Title VII, seven have rejected the idea. *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994); *United States EEOC v. AIC Security Inves-*

*tigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995); *Smith v. St. Bernards Regional Medical Ctr.,* 19 F.3d 1254 (8th Cir.1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583 (9th Cir.1993); *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993); *Cross v. Alabama Dept. of Mental Health & Mental Retardation,* 49 F.3d 1490 (11th Cir.1995). *But see Jones v. Continental Corp.,* 789 F.2d 1225 (6th Cir. 1986) (recognizing individual liability under Title VII).

Persuaded by the majority of circuit courts which have concluded that Title VII does not hold individuals liable in their personal capacity, this Court dismisses the claims under Title VII against the individual defendants Hamilton, Quenzel, Barradas and Liebergott, in their personal capacity. "It is inconceivable that Congress intended to allow civil liability to run against individual employees" when it limited coverage to employers with fifteen or more employees to protect from liability small employers with limited resources. *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993). Allowing individual liability against individual employees "does not comport with Congress' clearly expressed intent in enacting the statute." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995).

While recognizing that a literal reading of the statute allows courts to impose liability on individual employees, "the statutory scheme and remedial provisions of Title VII indicate Congress intended to limit liability to employer-entities with fifteen or more employees." *Id.* A comprehensive analysis of the legislative history undertaken by the court in *Tomka* demonstrates Congress never contemplated individual liability under Title VII. *Id.* Additionally, the amendments to the remedial provisions of Title VII in the Civil Rights Act of 1991 created compensatory and punitive damages, but "calibrated the maximum allowable damages award to the size of the employer." *Id.* These amendments further demonstrate Congress' intent to protect smaller employers from Title VII liability. A fortiori, imposing liability upon employees in their individual capacity would contradict the congressional intent under Title VII.

## B. Individual liability under Massachusetts and Federal Equal Pay Act.

The defendants also move to dismiss Count III which alleges the individual defendants violated the Massachusetts Equal Pay Act, Mass. Gen. Laws c. 149 § 105A ("MEPA") and Count IV which alleges violations of the Federal Equal Pay Act, 29 U.S.C. § 206(d) ("FEPA"). The First Circuit has not addressed the issue of individual liability under MEPA. The First Circuit's approach to the availability of individual liability under FEPA, however, guides this court in determining the issue under MEPA.

The definition of employer contained in MEPA and FEPA is identical. FEPA defines "employer" broadly, including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). MEPA defines employer with the same language in that an employer "shall include any person acting in the interest of an employer directly or indirectly." Mass. Gen. Laws ch. 149 § 1. Courts can use federal precedent as an aid in construing state statutes and regulations. *Best v. Rome*, 858 F.Supp. 271, 275 (D.Mass. 1994), *aff'd* 47 F.3d 1156 (1st Cir.1995) (recognizing that state courts use federal precedent in construing the duty of fair representation and Massachusetts regulatory statutes). Additionally, uniform interpretation of similar language is desirable. *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992). It follows that this Court should similarly construe the definition of "employer" in MEPA and FEPA.

The First Circuit has developed an economic realities test to determine if an individual employee is liable under FEPA. *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983). Under this test, courts examine the purported employer's job description, financial interest in the workplace, involvement in decisions affecting the plaintiff's employment terms, conditions and compensation, and relative operational control in the workplace. *Bergstrom v. University of New Hampshire*, 943 F.Supp. 130, 134 (D.N.H.1996) (citing *Donovan*, 712 F.2d 1509).

Each individual defendant holds a supervisory position over Danio. Although there is no indication any of the defendants have a financial interest in the workplace, the defendants' job titles indicate substantial involvement in decisions affecting the plaintiff's employment terms, conditions, and compensation and all seemingly have relative operational control in the workplace. For example, Danio has alleged that Hamilton, Quenzel, and Barradas set her rate of pay. Additionally, the Business Manager (Hamilton) and Chair (Quenzel) of Emerson's Mass Communication Division and the Director of Human Resources for Emerson (Barradas) would conceivably have significant control over the operations of the Mass Communication Division in which Danio worked. Based on the complaint and the memoranda submitted by each party, under the economic realities test the individual defendants may qualify as "employers" within the meaning of the term in FEPA and MEPA. Therefore, this Court must deny the individual defendants motion to dismiss the FEPA and MEPA claims as against them in their individual capacities until further information indicates they do not meet the definition of "employer" as defined by the economic realities test.

## CONCLUSION

For the foregoing reasons, the defendants motion to dismiss Counts II and V of the complaint, as those counts seek to apply Title VII against the individual defendants, is **ALLOWED**. The defendants motion to dismiss Counts III and IV under the Massachusetts Equal Pay Act and the Federal Equal Pay Act are **DENIED**.